UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERALD HOLMES** | * | CASE NO. _____ |
| **Plaintiff** | * | |
| **VERSUS** | * | JUDGE _____ |
| **SOUTHEAST LOUISIANA FLOOD** | * | MAGISTRATE_____ |
| **PROTECTION AUTHORITY EAST,** | * | |
| **KELLI CHANDLER, in her capacity as** | * | |
| **Executive Director, MICHAEL** | * | **JURY REQUESTED** |
| **BRENCKLE, in his capacity as agent,** | * | |
| **KELLI LOPARDI, in her capacity as an** | * | |
| **agent and KENNETH PINKSTON, as** | * | |
| **agent** | * | |
| **Defendants** | * | |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, **JERALD HOLMES,** a natural person, over the age of majority, domiciled in the Parish of Orleans, State of Louisiana who respectfully avers as follows:

1.

Made Defendants herein are the **SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY EAST,** (hereinafter, "SLFPA") a legislatively created entity, domiciled in the Parish of Orleans, State of Louisiana. Made additional Defendants are **KELLI CHANDLER, in her capacity as Executive Director, MICHAEL BRENCKLE, in his capacity as an agent, KELLI LOPARDI, in her capacity as an agent and KENNETH PINKSTON in his capacity as an agent** of Defendant, the **SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY EAST.**

2.

This Honorable Court has jurisdiction over this matter pursuant to, *inter alia,* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e to 2000e-17.

3.

Plaintiff was employed by the SLFPA since September 25, 2017 as an investigator/police officer working for one of its police departments, namely the Orleans Parish Levee District Police.

4.

Plaintiff was assigned to a joint DEA task force, which was led by Chief Kerry Najolia. Najolia, upon information and belief, learned that Chandler had plead guilty to a DWI offense in Georgia and did not disclose this information to the Board before being promoted to Regional Director. This incident occurred in 2017 when Chandler was the Director of Finance. Najolia was then terminated for undermining the authority of the executive director.

5.

After Najolia was terminated, Chandler appointed herself director of the police force and disbanded the DEA task force to which Plaintiff was assigned. Shortly after disbanding the task force, the plaintiff was called by District Commander Mike Brenckle (white male) who advised the plaintiff that he would be reporting to the night shift upon his completion of his task force duties. The plaintiff asked what the reason for his transfer to night shift was, to which Brenckle advised, because Chandler said so. At the Orleans Levee Police Department, a transfer from days to overnight is considered a punishment and is an indication to the officer that the officer is being

forced out of their job. The plaintiff requested a meeting with Chandler, which he was granted. In that meeting, Chandler advised the plaintiff that he would lead an investigative unit and would not go to the night shift. The reason for this this decision was because the plaintiff was considered "collateral damage" in Chandler's eyes due to the Chandler's decision to disband the task force. The plaintiff never received the position Chandler promised and was an investigator assigned to patrol on the day shift until he was fired. The promised position went to a white officer who remains in that position.

6.

Prior to disbanding the taskforce, Chandler instructed plaintiff, who was the lead investigator for the Internal Affairs Division (IAD), to identify the individual who ran her name through department databases and discovered her unreported DWI arrest. Specifically, through IAD Commander Captain Donald Juneau, plaintiff was instructed to determine who ran Chandler's name. It was discovered through an investigation with the State Police that Chandler's name was ran by several officers in the department with ties to Najolia. These officers conspired to out Chandler by releasing the information of her arrest to the media. A news story was generated about Chandler's history after she was promoted to Executive Director.

7.

Shortly after the Chandler issues, Sergeant Kenny Pinkston (white male) assigned to the Central Crime Center (CCC) approached the Human Resources Director Sandy West (black female) to advise her that he was ordered by Najolia to run her name through a department database. Pinkston went on to say that the order was given because of West's relationship with

Chandler. During his inquiry, Pinkston discovered that there were several Sandy Wests in the system, and he advised West that one of the Sandy Wests had an outstanding warrant and he could verify if that warrant was valid if West permitted him to proceed. Pinkston also advised that he could take care of the warrant because of his CCC access. West advised Pinkston that she was very disturbed by the news and wanted to consult with legal counsel. West called the plaintiff and advised him of what Pinkston disclosed. The plaintiff advised West to draft a signed statement detailing what Pinkston stated. The plaintiff then contacted Juneau to advise him of the situation. Captain Juneau launched an IAD investigation into Kenny Pinkston and made Captain Brenckle aware of what transpired.

8.

The plaintiff was then tasked with finding out if Pinkston ran West's name through any department databases and specifically determine if he had proper access to the database or if he exceeded his authority. While the investigation into Pinkston did not lead to information suggesting he accessed databases he was not authorized to use, it was determined that he failed to keep his credentials up to date and thus he was suspended for that failure by Captain Juneau. Brenckle, Pinkston, along with Kelli Lopardi, were the officers investigating Plaintiff for the alleged violations forming the subject matter of his retaliation and disparate treatment claims.

9.

As the Chief of Police and the Executive Director, Chandler disbanded the IAD team and removed the GPS system from the Lake Vista Civic Association detail with the assistance of Kelli Lopardi. The GPS system was used to track the movement of officers working the Lake Vista detail. It was removed in August just before an investigation into plaintiff and three other

black male officers relating to details began. The IAD team was disbanded under the pretext that Captain Juneau was retiring, and the unit was no longer needed. These two actions opened the door for Chandler to use Brenckle, Pinkston and Lopardi, none of whom had any investigative experience, and all of whom are white, to investigate plaintiff.

10.

During the investigation in September, plaintiff ran into Chandler at a retail store in Jefferson Parish, which Parish was part of plaintiff's then territorial jurisdiction, during lunch. He later learned from his supervisor that Chandler asked Plaintiff's supervisor whether police officers were able to go to Jefferson Parish during their lunch break. Despite learning this was not against department policy, she instructed the plaintiff's supervisor to write plaintiff up and placed a letter of reprimand in his personnel file. The plaintiff responded to the supervisors saying that Chandler and he were at the same location for lunch.

11.

Police officers are allowed to work private employment called details when not performing their employment duties for the Orleans Parish Levee District Police.

12.

Two of the details Plaintiff worked was for the Lake Vista Civic Association and the New Orleans Municipal Yacht Harbor.

13.

In or around August of 2022, the Detail Coordinator Kelli Lopardi, a white female, began a *sua sponte* investigation into four officers, including plaintiff, all of whom were black males.

During this investigation, the investigator alleged there were times when Plaintiff claimed to be working a detail but could not be located at the situs of the detail. What was left out of the investigation is that the plaintiff's detail at the New Orleans Municipal Yacht Harbor ("MYH") do not have restrooms, the only restroom was at the Lake Vista Civic Association thus it would be expected that he may have to leave the immediate vicinity of the MYH, but that he was always available by radio to respond to any incidents. Additionally, there were multiple occasions when the officers would be pulled from the details by their dispatcher to respond to non-detail related calls. Officers would also need to get fuel for their vehicles, minor maintenance such as air for tires, and food or water. The sloppy investigation into these four black officers, including Plaintiff was rife with issues leading any reasonable finder of fact to find that these officers were targeted because of their race, and a significantly more serious adverse employment was pursued than that which was sought when the officers were white.

14.

Rather than investigating the specific requirement of the detail, Lopardi instead plaintiff and the other three black officers using an investigative team that was comprised exclusively of white officers.

15.

While in the past, when the officer was white, an officer who was perceived to have violated a detail policy would receive additional training related to the perceived violation or a reprimand. In the instant case, Chandler did not counsel plaintiff relating to his alleged offense, choosing instead to have an arrest warrant issued and having plaintiff arrested in the middle of the night.

16.

Notably, the criminal charges were pushed not by the entity that might be considered the alleged "victim," namely the MYH or the Lake Vista Civic Association, but instead it was Chandler who pushed the district attorney to pursue these criminal charges in retaliation for Plaintiff's prior complaints.

17.

Plaintiff filed a complaint with the Equal Opportunity Employment Commission and was issued a right to sue letter on August 20, 2024, and has thus exhausted his administrative remedies. See exhibit 1.

18.

As a result of these intentional acts of discrimination, disparate treatment, and retaliation by Defendant through its agents, Plaintiff is entitled to the following non-exclusive damages:

a. Compensatory damages;

b. Back pay;

c. Front pay;

d. Past and future emotional distress damages;

e. Costs and expenses incurred in bringing this matter;

f. Attorneys' fees, and;

g. Any other damages to which Plaintiff may be entitled.

19.

Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiff prays that after all proceedings be had, and a trial by jury take place, judgment shall be entered in favor of Plaintiff and against Defendants and Plaintiff be awarded all damages to which he is legally entitled, including judicial interest from the date of judicial demand.

                                                **RESPECTFULLY SUBMITTED,**

                                                **/s/ Kevin P. Klibert**
                                                **Klibert & Christina Law Firm**
                                                **425 W. Airline Highway, Ste. B**
                                                **LaPlace, LA 70068**
                                                **Mailing Address: P. O. Box 24700**
                                                **New Orleans, LA 70184**
                                                **Telephone: 985-359-6440**
                                                **Facsimile: 800-475-1640**
                                                **Email: kevin@kc-lawfirm.com**